UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | * |
| MICHAEL L. BABICH, ALEC BURLAKOFF, MICHAEL J. GURRY, RICHARD M. SIMON, SUNRISE LEE, JOSEPH A. ROWAN, and JOHN KAPOOR, | * Criminal Action No. 16-cr-10343-ADB |
| Defendants. | * |

## MEMORANDUM AND ORDER ON MOTION TO SEVER

BURROUGHS, D.J.

On September 11, 2018, a grand jury returned the Second Superseding Indictment ("SSI") against Defendants Michael Babich, Alec Burlakoff, Michael Gurry, Richard Simon, Sunrise Lee, Joseph Rowan, and John Kapoor, charging them with engaging in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). [ECF No. 419]. Defendants Gurry, Simon, Lee, Rowan, and Kapoor are scheduled to be tried together beginning on January 28, 2019.[1] Currently pending before the Court is Defendant Lee's motion to sever her trial pursuant to Federal Rule of Criminal Procedure 14. [ECF No. 588]. For the following reasons, the motion to sever is DENIED.

## I. BACKGROUND

The following allegations are drawn from the SSI. [ECF No. 419]. The Defendants held executive management positions at a pharmaceutical company, Insys Therapeutics, Incorporated ("Insys"), that manufactured, marketed, and sold a fentanyl spray called Subsys. [ECF No. 419 at ¶¶ 16–22]. The SSI alleges that Insys constitutes the enterprise underlying the RICO

---

[1] On November 28, 2018, Defendant Burlakoff pled guilty to the SSI, and on January 9, 2019, Defendant Babich pled guilty to an information.

conspiracy.  [Id. at ¶ 1].  It further alleges that from about May 2012 through about December 2015, the Defendants and their co-conspirators sought to increase profits for the enterprise and for themselves by conducting the affairs of the enterprise including through bribes, fraud, and the illicit distribution of Subsys in violation of 18 U.S.C. § 1962(d).  [Id. at ¶¶ 23, 26].  Specifically, the SSI alleges that the Defendants bribed and provided kickbacks to some practitioners in exchange for the practitioners prescribing more and increasing the dosage and number of units of Subsys for new and existing prescriptions.  [Id. at ¶ 27].  In some cases, the Defendants expressly required practitioners to write a minimum number of prescriptions, at a minimum dosage, or for a minimum number of units, in order to continue receiving bribes and kickbacks.  [Id. at ¶ 28]. The bribes and kickbacks took multiple forms, including being disguised as honoraria purportedly for practitioners' participation in educational events regarding the use of Subsys, paying the salaries of members of the office staff for certain targeted practitioners, and providing Insys employees to perform administrative tasks that the practitioners would otherwise have had to pay someone else to perform.  [Id. at ¶¶ 29, 46, 48, 54–55].

In addition, the SSI alleges that the Defendants, including the five still scheduled for trial, and other co-conspirators instructed Insys employees to make false and misleading representations and omissions to insurers in order to secure payment for Subsys prescriptions. [Id. at ¶ 63].  The SSI further claims that, in order to increase the rate of payment authorizations for Subsys prescriptions, Defendants Kapoor, Babich, Gurry, and other co-conspirators created a special unit within Insys that was dedicated to obtaining prior authorization of Subsys from insurers. [Id. at ¶ 64].  At the direction of Defendants Kapoor, Babich, Gurry, and other co-conspirators, employees of this unit made false and misleading representations to insurers about

2

patient diagnoses, including about the type of pain being treated and the patients' prior course of treatment with other medications, to secure payment authorizations. [Id.].

The SSI also alleges that Defendants Kapoor, Babich, Burlakoff, Simon, Lee, and Rowan engaged in conduct to prevent the detection of their illegal activities by the DEA and others, including by having Subsys shipped directly to pharmacies to reduce the possibility of wholesalers reporting suspicious activity to the DEA. [Id. at ¶¶ 71–72].

On December 6, 2018, Defendant Lee filed a motion to sever her trial from that of her remaining co-Defendants, claiming that the current trial plan imposes a financial and personal hardship on her, there is a risk of spillover prejudice, and her defenses conflict with those of her co-Defendants. [ECF No. 588 at 2–7]. The Government opposed Defendant Lee's motion on December 20, 2018. [ECF No. 637].

## II. DISCUSSION

Federal Rule of Criminal Procedure 8(b) provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The "general rule" is that two defendants indicted together should be tried together, in order "to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." United States v. Soto-Beniquez, 356 F.3d 1, 29 (1st Cir. 2003); see also Zafiro v. United States, 506 U.S. 534, 537 (1993).

Pursuant to Federal Rule of Criminal Procedure 14(a), the Court may sever Defendants' trials if a consolidated trial "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Where, as here, Defendants have been properly joined under Rule 8(b)—Defendant Lee does not argue to the contrary—the court should grant a severance motion "only if there is a

3

serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. The preference for a joint trial is "particularly strong" in the context of a conspiracy. United States v. Saunders, 553 F.3d 81, 85 (1st Cir. 2009); see United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995) (severance "will rarely, if ever, be required" in the context of conspiracy (quoting United States v. Brandon, 17 F.3d 409, 440 (1st Cir. 1994))); cf. United States v. Azor, 881 F.3d 1, 12 (1st Cir. 2017) ("[W]here the evidence against a defendant might show a defendant's association with his co-defendants even if he were tried alone, the argument for prejudice becomes much weaker.").

First, Defendant Lee contends that financial and personal hardships warrant severing her case. She currently lives in Michigan with her two children and, as a result, must pay for accommodations in Massachusetts and travel between Michigan and Massachusetts in order to visit her children on the weekends for the duration of the trial, which she claims would create a financial hardship. [ECF No. 588 at 2–3]. Moreover, Defendant Lee argues that being away from her children during the trial would create a personal hardship. [Id. at 3]. While Defendant Lee may be correct that a separate trial would substantially ameliorate these hardships, she has cited no case law suggesting that financial or personal hardships are grounds for severance under Federal Rule of Criminal Procedure 14. While the Court recognizes that these types of hardships often exist in criminal matters, it does not find that they constitute the severe and compelling prejudice that "would compromise a specific trial right of one of the defendants . . . or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Accordingly, any financial or personal hardships that Defendant Lee may suffer do not warrant severance.

4

Second, Defendant Lee argues that the Court should sever her trial because there is a risk of spillover prejudice, as the SSI "states that the defendants made 'false and misleading representations' to insurance companies about medical diagnoses in order to secure payment'" but "fails to distinguish between the roles of each defendant." [ECF No. 588 at 6]. The First Circuit has long recognized that "some level of prejudice is inherent in trying two or more defendants together." Azor, 881 F.3d at 12 (citing King v. United States, 355 F.2d 700, 704 (1st Cir. 1966)). This spillover effect, however, "rarely constitutes sufficient prejudice to warrant severance." Azor, 881 F.3d at 12. Defendant must show "prejudice so pervasive that a miscarriage of justice looms." Id. (quoting United States v. Trainor, 477 F.3d 24, 36 (1st Cir. 2007)). Moreover,"[w]here evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect." Flores-Rivera, 56 F.3d at 326 (quoting United States v. O'Bryant, 998 F.2d 21, 26 (1st Cir. 1993)).

Here, Defendant Lee contends that the SSI's allegations concerning her participation in the conspiracy are confined to bribes and kickbacks paid to two practitioners and that the SSI does not include specific averments about her involvement with the Insys Reimbursement Center or Defendants' attempts to avoid detection. [Id. at 3]. She asserts that "the risk of spillover prejudice is substantial in this case primarily because of the anticipated volume of evidence regarding the Insys Reimbursement Center . . . that is unrelated to" Defendant Lee, ECF No. 593 ¶ 13, but fails to identify any evidence or argument that would not be admissible against her in a separate trial. Conclusory allegations of prejudice "do not suffice to overcome the presumption in favor of joinder." United States v. Baltas, 236 F.3d 27, 33 (1st Cir. 2001). Moreover, while the Government contests Defendant Lee's characterization of her role in the alleged conspiracy,

5

see ECF No. 637 at 2–3, even comparatively minor participation in the conspiracy would not mandate severance. See United States v. Hidalgo, No. 13-cr-10017-RWZ, 2015 WL 13388426, at *6 (D. Mass. Jan. 23, 2015) ("[A] small part of a conspiracy is still part of that conspiracy, and mere speculation about evidentiary spillover is insufficient to overcome the strong presumption in favor of joinder in conspiracy cases."); id. (severance only warranted where there is serious risk that joinder compromises a trial right of one of the defendants or prevents jury from making a reliable judgment about guilt or innocence, "[e]ven where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others" (quoting O'Bryant, 998 F.2d at 26)). Further, Defendant Lee has not shown that appropriate limiting instructions would not mitigate any ensuing spillover prejudice. See United States v. Candelario-Santana, 834 F.3d 8, 24 (1st Cir. 2016) ("[A] trial court can safeguard a defendant from potentially prejudicial spillover by delivering jury instructions as to the admissibility of the evidence.").

In sum, although Defendant Lee may believe that she has a better chance of acquittal if tried alone, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." Zafiro, 506 U.S. at 540. She has not provided any grounds for finding that the alleged spillover evidence would not be admissible after severance. Even if some evidence may be inadmissible at a separate trial, carefully crafted jury instructions can safeguard against the potential for prejudicial spillover. Thus, the purported spillover evidence against Defendant Lee does not present prejudice sufficient to warrant a severance.

Finally, Defendant Lee argues that she is entitled to severance from her co-Defendants because she will suffer prejudice from antagonistic defenses. [ECF No. 588 at 6–7]. In Zafiro,

the Supreme Court expressly declined to adopt a bright-line rule mandating severance whenever co-defendants have antagonistic defenses, reasoning that "[m]utually antagonistic defenses are not prejudicial *per se*" and "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538–39. Following Zafiro, the First Circuit held that "antagonistic defenses only require severance if the tensions between the defenses are so great that the finder of fact would have to believe one defendant at the expense of the other." United States v. Rose, 104 F.3d 1408, 1415 (1st Cir. 1997) (citing United States v. Smith, 46 F.3d 1223, 1230 (1st Cir. 1995)). In contrast, "mere fingerpointing among codefendants—*i.e.*, the familiar 'he did it, not I' defense—normally is not a sufficient ground for severance." United States v. Trinh, 665 F.3d 1, 19 (1st Cir. 2011) (citation omitted); see also United States v. McLaughlin, 957 F.2d 12, 18 (1st Cir. 1992) ("The fact that two defendants assert antagonistic defenses does not, *per se*, require severance, even if defendants are hostile or attempt to cast blame on each other.").

Defendant Lee contends that severance is necessary because there is a "heightened risk of incompatible defenses" between sales representative and management Defendants. [ECF No. 593 ¶¶ 17–18]. Specifically, she argues that "a management defendant may be able to avail itself of a 'rogue' sales staff defense and the sales staff may be able to avail itself of an authorization defense," and maintains that she "does not wish to forego or otherwise soften an authorization defense at a joint trial." [Id. ¶¶ 19–23]. Her assertions regarding potential antagonistic defenses between sales representative and management Defendants are conclusory and devoid of any legal

7

or evidentiary support.[2]  "In order to gain a severance based on antagonistic defenses, the antagonism . . . must be such that if the jury believes one defendant, it is *compelled* to convict the other defendant."  United States v. Floyd, 740 F.3d 22, 36 (1st Cir. 2014) (citation omitted) (emphasis in original).  Defendant Lee's bare contention that there is a "heightened risk" of antagonism is insufficient, and the Court finds that her motion amounts to nothing more than conjectural "fingerpointing," which does not justify severance.  Trinh, 665 F.3d at 19.

## III.    CONCLUSION

For the reasons stated herein, the motion to sever [ECF No. 588] is DENIED.

**SO ORDERED.**

January 10, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

[2] The Court also notes that Defendant Lee held management positions at Insys including as the Regional Sales Manager for the Mid-Atlantic Region, Regional Director for the Central Region, and Regional Director for the West Region.  [ECF No. 419 ¶ 21].