**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   Crim. No. 16-10343-ADB |
| | ) |
| SUNRISE LEE, | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT LEE'S**
**MOTION FOR STAY OF SENTENCE PENDING APPEAL**

The motion of the defendant, Sunrise Lee, to stay her sentence pending appeal should be denied, as she has not identified a substantial question of law or fact likely to result in a reversal or a new trial.

**STATEMENT OF FACTS**

On May 2, 2019, following a 50-day trial and 15 days of deliberations, a jury convicted Lee and four other defendants—Michael J. Gurry, Richard L. Simon, Joseph A. Rowan, and John Kapoor—of conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. §1962(d). [D.841]. Following the verdicts, all five defendants moved for judgment of acquittal and for a new trial. [D.859-864]. On November 26, 2019, the Court granted a partial judgment of acquittal in the cases of Simon, Lee, Rowan, and Kapoor as to the Controlled Substances Act ("CSA") and honest services fraud ("HSF") predicates, but otherwise denied the motions. [D.1028].

On January 22, 2020, the Court sentenced Lee to one year and one day of imprisonment to be followed by three years of supervised release, and ordered a self-surrender date of March 4, 2020, which was subsequently extended to April 15, 2020. [D.1202, 1223]. Lee has now moved to stay her sentencing pending appeal. [D.1217].

## **LEGAL STANDARD**

Lee seeks a stay of her sentence of incarceration pursuant to 18 U.S.C. §3143(b). That statute provides that a person convicted of an offense and sentenced to a term of imprisonment shall be detained pending appeal "unless the judicial officer finds":

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> > (i) reversal,
> >
> > (ii) an order for a new trial,
> >
> > (iii) a sentence that does not include a term of imprisonment, or
> >
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. §3143(b)(1). "If the judicial officer makes such findings, such judicial officer shall order the release of the person * * *." *Id.*

With respect to the showing required under 18 U.S.C. §3143(b)(1)(B), the First Circuit has stated that it has two distinct parts: "(1) that the appeal raise a substantial question of law or fact and (2) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985); *see also United States v. Zimny*, 857 F.3d 97, 99 (1st Cir. 2017) (referring to the former as the "the substantiality prong" and the latter as the "likelihood prong"). In determining whether an appeal raises a substantial question of law or fact, it is not enough for a defendant to show that a disputed point

of law or fact was "fairly debatable" or that a "possibility of reversal" exists. *Bayko*, 774 F.2d at 523 (vacating district court's order and revoking bail upon finding that the district court erroneously ordered bail when it concluded that there was a "possibility of reversal" on appeal). Rather, an appeal must present a "'close question or one that very well could be decided the other way.'" *Zimny*. 857 F.3d at 100 (quoting *Bayko*, 774 F.2d at 523).

## ARGUMENT

Lee contends that her sentence should be stayed pending appeal because her anticipated appeal will raise substantial questions of law or fact that will result in a reversal or a new trial. As shown below, none of the anticipated claims she has identified warrants a stay of her sentence pending appeal. .

### 1.     Prejudicial spillover

Lee contends (Mot. at 6-11) that her appeal will raise a substantial issue because prejudicial spillover from the evidence regarding the CSA and HSF predicates substantially impacted the jury's determination that the mail and wire fraud predicates were proven. As the government showed in responding to a similar claim raised by Defendant Kapoor, this claim is insubstantial.

"To prevail on an evidentiary spillover claim, the defendant must prove 'prejudice so pervasive that a miscarriage of justice looms.'" *United States v Paz-Alvarez*, 799 F.3d 12, 30 (1st Cir. 2015) (quoting *United States v. Levy-Cordero*, 67 F.3d 1002, 1008 (1st Cir. 1995) (internal quotation marks omitted). For at least four reasons, Lee has not made, and cannot make, that showing here.

First, and as the Court noted in its ruling, the Second Superseding Indictment ("SSI") charged a single RICO conspiracy that consisted of bribing healthcare practitioners to prescribe Subsys and then defrauding insurers to pay for those prescriptions, and the patient evidence that

Lee argues supports her claim of evidentiary spillover "would likely have been admissible against Defendants even if the trial were only on the ordinary mail and wire fraud predicates because the Government could have used the testimony to show a patient's history of cancer or lack of dysphagia." [D.1028, at 38]. Hence, the Court rightly concluded, the patient evidence "cannot support a claim of spillover prejudice from the CSA predicate." [*Id.*].

Second, Lee's claim of prejudicial evidentiary spillover is not advanced by her assertion (Mot. at 8) that "the vast majority of the evidence adduced at trial against Lee related to the now-rejected CSA and HSF allegations," and "the evidence on the two issues was largely segregated at trial, with the former the subject of testimony from sales executives, representatives, and medical practitioners, and the latter the subject of testimony from witnesses who worked in the IRC and insurance company personnel." Even accepting Lee's premise that the evidence regarding these predicates was largely segregated from each other, "[t]his factor increases the likelihood that the jury engaged in the 'individualized factfinding' to which each defendant was entitled." *United States v. Mubayyid*, 658 F.3d 35, 73 (1st Cir. 2011) (quoting *United States v. Josleyn*, 99 F.3d 1182, 1188 (1st Cir. 1996)).

Third, the Court "took measures against spillover prejudice from one predicate to another and from one Defendant to another by instructing the jury to consider the evidence as to each Defendant and to treat each Defendant individually." [D.1028, at 39]. Thus, for example, the Court instructed the jury that: "You must, as a matter of law, consider each Defendant and his or her involvement with the crime separately . . . [Y]our verdict as to any Defendant should not control your decision as to any other Defendant." [4/4/19 Tr. at 29-30]. The Court also not only instructed the jury about the elements of each of the five types of alleged racketeering activity alleged in the SSI, [*id.* at 43-54], but further instructed the jury that it may not find that the

government proved the pattern of racketeering element unless the jury "agreed unanimously as to which type or types of racketeering acts the Defendant in question agreed would be committed by a member or members of the conspiracy." [*Id.* at 42]. In particular, the Court instructed the jury as follows:

> You may not find that the Government has proved this [pattern of racketeering] element unless you all agree unanimously as to which type or types of racketeering acts the Defendant in question agreed would be committed by a member or members of the conspiracy. That is, you cannot find a Defendant guilty if some of you think the Defendant agreed that a member of the conspiracy would commit racketeering acts A and B, but the rest of you think that the Defendant only agreed that a member of the conspiracy would commit acts C and D.

[*Id.*]. These instructions ensured that the jury considered each of the alleged RICO predicates separately and individually. *See, e.g., United States v. Trainor*, 477 F.3d 24, 36 n.34 (1st Cir. 2007) ("Additionally, the court minimized the risk of improper spillover by instructing the jury that each count charged a separate offense and that the jury must individually consider each one:"); *United States v. Casas*, 425 F.3d 23, 50 (1st Cir. 2005) ("The court took adequate measures to guard against spillover prejudice by instructing the jury to consider each charged offense, and any evidence relating to it, separately as to each defendant.").

Finally, and perhaps most significantly, the jury's discriminating verdict as to Defendant Gurry—finding that only the mail and wire fraud predicates were proven as to him but that all five predicates were proven as to the other Defendants, [D.841, at 1-7]—shows that the jury was able to follow the Court's instructions and differentiate between the Defendants and the alleged RICO predicates. *See, e.g., Mubayyid*, 658 F.3d at 73 ("Moreover, the jury's acquittal of Al-Monla on his false statement charge, pursuant to the same statute under which Muntasser was convicted, further undercuts the defendants' spillover argument."); *United States v. Edgar*, 82 F.3d 499, 504

(1st Cir. 1996) (because jury acquitted defendant on one of several counts, "[t]he jury thus showed itself clearly capable of discriminating among the evidence applicable to each count"); *United States v. Natanel*, 938 F.2d 302 (1st Cir. 1991) (no prejudice based on evidentiary spillover where the jury acquitted defendant on some counts, the trial court instructed jury to treat defendants as individuals and to consider each charge separately); *United States v. Porter*, 764 F.2d 1, 13 (1st Cir. 1985) (discriminating verdict indicated that the jurors were able to follow the court's instructions and discern among the various defendants and charges). Indeed, the Second Circuit has stated that the absence of spillover is most readily inferable where the jury has convicted a defendant on some counts but not on others." *United States v. Hamilton*, 334 F.3d 170, 183 (2d Cir. 2003).

None of the contrary arguments advanced by Lee alters this conclusion. She asserts (Mot. at 9) that the government allegedly "enhanced the prejudicial impact of the evidence it introduced in support of the CSA and HSF predicates by choosing to frame it in a way that would rouse the jury's passions." But in doing so, she points primarily to the patient testimony that the Court determined was properly admitted because it (1) conformed to the Court's *in limine* ruling in which it allowed only limited use of patient testimony and carved out most inflammatory aspects, such as the social consequences of addiction, and (2) it was relevant to show the medical care that patients received from co-conspirator prescribers, to demonstrate that certain prescriptions were not medically necessary or were excessive, and to support claims that a patient's medical status was different from what was represented to insurers. [D.1028, at 49]. The admission of this evidence consequently does not support Lee's claim of prejudicial spillover.

Equally unavailing is Lee's assertion (Mot. at 9-10) that the government "chose to start on the theme of patient harm in its closing argument by emphasizing the potency and danger of

Subsys," and continued on this theme by saying that the Defendants placed "[p]rofits over patients" and that Defendants were motivated by greed. But neither Lee nor any of the other Defendants objected to these comments at trial, either contemporaneously, by requesting a sidebar following the government's closing, or in the sidebar that followed the government's rebuttal. [4/4/19 Tr. at 60-66, 71, 77, 85, 114, 116-117; 121; 4/5/19 Tr. at 168, 186-187]. This claim therefore would be reviewable only for plain error on appeal, a demanding standard under which the First Circuit has said it has "leeway to correct only the most egregious of unpreserved errors." *United States v. Etienne*, 772 F.3d 907, 913 (1st Cir. 2014) (internal quotation omitted). Under the plain error standard, Lee would have to show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *United States v. Duarte*, 246 F.3d 56, 60 (1st Cir. 2001). She cannot meet that standard, nor does she make any attempt in her motion to address this standard. As the Court determined in rejecting this claim, "[s]ome of the statements cited are purely factual, and none run afoul of the Court's motion *in limine* ruling concerning patient testimony, which limited the scope of what would be admissible and did not limit how the admissible evidence could be used. All told, the comments fell within the bounds of permissible argument and do not amount to plain error. [D.1028, at 47 n.95].

Lee further asserts (Mot. at 10-11) that on the mail fraud predicate, "the verdict itself suggests that the jury conflated" the mailing of payments to practitioners with affirmative misrepresentations to insurance companies on telephone calls. Lee does not flesh out this argument, and, in any event, she appears to have herself conflated the "in furtherance of" element of the mail fraud predicate with the elements of the CSA and HSF predicates. As discussed in greater detail below, the Court determined that the "in furtherance of" element of the mail fraud

predicate was proven in at least two different ways, and the jury reasonably could have found that the mailings were incident to an essential part of the mail fraud scheme even if the jury also determined that the elements of the CSA and HSF predicates were not proven as to Gurry.

For these reasons, Lee's assertion that her claim of prejudicial spillover presents a substantial question that would likely result in reversal or a new trial lacks merit.

### 2. The Wire Fraud Predicate

Lee contends (Mot. at 13-14) that her appeal will raise a substantial question because the law is unsettled on whether the intracorporate conspiracy doctrine bars her conviction based on the wire fraud predicate. As the government has shown previously, no substantial question of law is presented by this issue because the "recognized circuit split" on which Lee bases this argument involves whether the intracorporate conspiracy doctrine applies to *civil* RICO conspiracies; and, as this Court noted, "[e]ven courts that have applied the intracorporate conspiracy doctrine in civil cases do not apply it to the criminal context." [D.1028, at 27 (citing cases). Moreover, in *United States v. Peters*, 732 F.2d 1004 (1st Cir. 1984), the First Circuit stated its express agreement with those decisions that had rejected application of the intracorporate conspiracy doctrine to criminal conspiracies:

> These cases reject the syllogism, at least in the criminal context, that since the acts of corporate officers constitute acts of the corporation, and since a corporation cannot conspire with itself, it cannot conspire with its officers. There is a world of difference between invoking the fiction of corporate personality to subject a corporation to civil liability for acts of its agents and invoking it to shield a corporation or its agents from criminal liability where its agents acted on its behalf.

732 F.2d at 1008 n.7 (citing *United States v. Hartley*, 678 F.2d 961, 970 (11th Cir. 1982). And the Supreme Court itself has never this doctrine outside the antitrust context. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158,166 (2001) (in holding that a president and sole shareholder

8

of corporation was a "person" distinct from the enterprise subject to liability under RICO, stating that this conclusion was not "inconsistent with antitrust law's intracorporate conspiracy doctrine" because "that doctrine turns on specific antitrust objectives") (citing *Copperweld Corp.*, 467 U.S. at 770–71) (emphasis added); *see also Ziglar v. Abassi*, 137 S. Ct. 1843, 1868 (2017) (stating that the Court had not given approval to the intracorporate conspiracy doctrine in the specific context of 28 U.S.C. §1985(3)).

For these reasons, no substantial question of law is presented with respect to the wire fraud predicate.

### 3. The Mail Fraud Predicate

Lee contends (Mot. at 13-15) that her appeal will raise a substantial question of law or fact because the mail fraud predicate is not supported by sufficient proof that the mailings were used to facilitate the insurance fraud scheme. As the government showed in its opposition to Defendant Kapoor's motion for a stay of sentence pending appeal, this claim, too, is insubstantial.

As a threshold matter, this Court need not even consider this issue because, as shown above, Lee has not shown that her challenge to the wire fraud predicate presents a substantial question of law. The jury unanimously found that Lee agreed that she or another conspirator would intentionally commit two or more acts of wire fraud. [D.841, at 5]. Because that determination alone satisfies the pattern of racketeering element of the RICO conspiracy charged in the SSI, Lee cannot show that even if she is successful on appeal with respect to her challenge to the mail fraud predicate, that would lead to reversal or a new trial.

In any event, even if considered on the merits, Lee's challenge fails because the Court correctly determined that the mail fraud predicate was established in at least two ways: (1) the fraudulent scheme in the SSI "deceived insurers into paying for prescriptions for which they

otherwise would not have paid," and "[t]he mailing of bribes to prescribers facilitated the execution of the fraudulent scheme by incentivizing prescriptions from high-volume practitioners"; and (2) the evidence at trial "demonstrated that insurers would not cover certain prescriptions, that the IRC sought coverage from insurers for these prescriptions, and that, to gain prior authorizations, IRC employees known as prior authorization specialists misled insurers" in several different ways which made it more likely that the prior authorizations would be obtained, and, thus, were material to the insurer's decision to cover the prescription [D.1028, at 29].

For these reasons, no substantial question of law or fact is presented with respect to the mail fraud predicate founders.

### 4.     Rebuttal argument

Lee contends (Mot. at 16-19) that she will raise a substantial question on appeal that the government's rebuttal argument was improper. As the government showed in its opposition to Defendant Kapoor's motion for stay of sentence pending appeal, that claim also is insubstantial. With respect to the "loaded gun" metaphor, the Court correctly determined that all three considerations that bear on whether a remark in closing or rebuttal "so poisoned the well that the trial's outcome was likely affected"—"(1) the severity of the misconduct, including whether it was isolated or deliberate; (2) whether curative instructions were given; and (3) the strength of the evidence against the defendant," *United States v. Peake*, 804 F.3d 81, 93 (1st Cir. 2015) (internal quotation omitted)—counseled against a finding that a new trial was warranted. The Court found that that remark was isolated as the government only used the metaphor once during a rebuttal that lasted approximately 30 minutes; the Court gave a supplemental instruction that addressed the legal principles implicated by the remark; and the strength of the evidence against Kapoor and the other Defendants on the mail and wire fraud predicates was strong. [D.1028, at 45-46].

Nor is there any merit to Lee's contention (Mot. at 17-18) that the Court's conclusion that she waived other objections to the government's rebuttal argument presents a substantial question on appeal, As the government has argued previously, by moving for curative instructions in lieu of a mistrial—Defendants' request for a mistrial was only in the event the Court declined to give curative instructions, which did not happen—Defendants implicitly conceded any complaints they had with the government's rebuttal could be cured if their requested curative instructions were given.  When the Court thereafter circulated draft instructions to the parties and the Defendants offered edits without objecting that the supplemental instructions were inadequate (with the exception of the loaded gun metaphor), Defendants again signaled that the supplemental instructions proposed by the Court were acceptable.  And, after the Court read the supplemental instructions to the jury and asked whether any party wanted a sidebar, no party requested a sidebar or voiced an objection.  [4/8/19 Tr. at 22].  Put simply, and with the exception of the "loaded gun" metaphor, at no time did Defendants alert the Court that its proposed supplemental instructions were inadequate.  In these circumstances, and as the Court correctly determined, "Defendants' silence can be interpreted as approval of the Court's instruction."  [D.1028, at 44].

This conclusion is consistent with Fed. R. Crim. P. 30(d), which requires a party who objects to "any portion" of a district court's jury instructions or the failure to give a requested instruction must inform the court of "the specific objection and the grounds for the objection before the jury retires to deliberate."  Thus, "[t]o preserve an objection to a jury instruction under Fed. R. Crim. P. 30(d), a litigant must lodge a specific objection and state the grounds for the objection *after* the court has charged the jury and before the jury begins deliberations."  *United States v. Roberson*, 459 F.3d 39, 45 (1st Cir. 2006) (emphasis in original).  Here, once again, after the Court read the supplemental instructions to the jury and asked whether any party wanted a sidebar, no

11

party requested a sidebar or voiced an objection, and that failure underscores the conclusion that Defendants' objections to the government's rebuttal (with the exception of the loaded gun metaphor) were waived.

In sum, Lee has failed to show that her anticipated challenge on appeal to the government's rebuttal presents a substantial question of law.

### 5. Evidence on the mail and wire fraud predicates

Lee lastly asserts (Mot. at 17-19) that she will present a substantial question on appeal that she is entitled to a new trial under Fed. R. Crim. P. 33 because the evidence on the mail and wire fraud predicates against her was "very thin." The Court addressed the evidence of Lee's guilt in rejecting this argument in its post-trial ruling:

- Lee interacted with the IRC, and the jury could have inferred that she understood the connection between the scheme to bribe doctors and the IRC scheme;

- As part of the IRC pilot program, Lee worked directly with Liz Gurrieri on charts from Dr. Awerbuch and other healthcare practitioners;

- In her sales role, Defendant Lee worked with two of the most prolific writers of Subsys in the country, Drs. Madison and Awerbuch, and prescriptions written by these physicians were only valuable to Insys if it received prior authorizations, a fact that would have been apparent to Lee;

- Lee worked to put systems and people in place in these offices to maximize the number of prior authorizations, which is consistent with knowledge of and agreement with the IRC scheme, such as arranging to hire Kourtney Nagy as an Insys employee, whose role it was to "try to get the prescriptions pushed through";

- The jury could have inferred that Lee knew about sales representative Brett Szymanski's and Insys employee Brian Trask's efforts to assist Dr.
- Awerbuch's office with the prior authorizations;

- Lee was aware that sales representative Holly Brown would sometimes spend the day in Dr. Madison's office to process prior authorizations, and Brown testified that part of her role was to ensure that the prior

      authorizations were submitted to the IRC and explained that she was aware of certain strategies that increased the rates of insurance approval, such as stating that the patient had difficulty swallowing even if they did not.

[D.1028, at 33-34].

Based on this evidence and inferences drawn therefrom, the Court correctly determined that a reasonable jury could find beyond a reasonable doubt that Lee conspired to commit mail and wire fraud in violation of RICO. [*Id.* at 34]. Hence, no substantial question of law or fact is presented by Lee's anticipated challenge to the sufficiency of the evidence.

## CONCLUSION

For the foregoing reasons, Lee's motion for a stay of sentence pending appeal should be denied.

                              Respectfully submitted,

                              ANDREW E. LELLING
                              United States Attorney

By:   /s/ *Mark T. Quinlivan*
        K. NATHANIEL YEAGER
        FRED WYSHAK, JR.
        DAVID G. LAZARUS
        MARK T. QUINLIVAN
        Assistant U.S. Attorneys

## Certificate of Service

I, Mark T. Quinlivan, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendants.

By:   */s/ Mark T. Quinlivan*
        MARK T. QUINLIVAN